No. 13-3597

_____

UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

MARK D. LEE, Plaintiff-Appellant

v.

SMITH & WESSON CORP., Defendant-Appellee

_____

On Appeal from the United States District Court

for the Northern District of Ohio

_____

BRIEF OF APPELLANT

_____

Brittany L. Lee
Brittany L. Lee, Attorney At Law
611 S. Scott St.
New Orleans, LA 70119
(504) 428-4315
Fax: (504) 899-1753
Email: brittanylaurenlee@yahoo.com
Counsel for Plaintiff-Appellant

## DISCLOSURE OF CORPORATE AFFILIATION

## <u>AND FINANCIAL INTEREST</u>

Appellant Mark D. Lee, pursuant to 6th Cir. R. 26.1, makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned company?

No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

No.

Respectfully Submitted,

Brittany L. Lee

*s/Brittany L. Lee*

Brittany L. Lee
LA Bar #33239
611 S. Scott St.
New Orleans, LA 70119
Phone: (504) 428-4315
Fax: (504) 899-1753
e-mail: brittanylaurenlee@yahoo.com

September 9, 2013

# TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................................ 4

STATEMENT OF JURISDICTION ........................................................... 6

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW.................... 8

STATEMENT OF THE CASE .................................................................. 9

STATEMENT OF FACTS ....................................................................... 11

SUMMARY OF ARGUMENT.................................................................. 16

STANDARD OF REVIEW ....................................................................... 18

ARGUMENT ........................................................................................... 19

CONCLUSION ........................................................................................ 36

RELIEF SOUGHT ................................................................................... 37

CERTIFICATE OF COMPLIANCE…………………………….....  38

CERTIFICATE OF SERVICE ................................................................. 39

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ... 40

# TABLE OF AUTHORITIES

**CASES**

Ambrosini v. Labarraque, 101 F.3d 129, 140 (D.C. Cir. 1996)…………………34

American & Foreign Ins. Co. v. General Electric Co., 45 F.3d 135

      (6th Cir. 1995)……………………………………………………..…..17

Andler v. Clear Channel Broad., Inc., 670 F.3d 717 (6th Cir. 2012)…21, 29, 31, 35

Berry v. City of Detroit, 25 F.3d 1342, 1350 (6th Cir. 1994)…………………….33

Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579

      (1993)……………………………………………………..…9, et seq.

Davis v. Combustion Eng'g, Inc., 742 F.2d 916, 919 (6th Cir. 1984)………..……22

Cook v. American S.S. Co., 53 F.3d 733, 738 (6th Cir. 1995)…………………33

General Electric Co. v. Joiner, 522 U.S. 136(1997)………………..……....17, 33

In re Scrap Metal Antitrust Litigation, 52,7 F.3d 517(6th Cir. 2008)…………23, 24

Jahn v. Equine Services, 233 F.3d 382 (6th Cir., 2000)…………………………3

Kumho Tire v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 1171 (1999)……..17, 20

Morales v. Am. Honda Motor Co., 151 F.3d 500, 516 (6th Cir. 1998)………..21, 30

United States v. Downing, 753 F.2d 1224, 1242 (CA3 1985)……………………23

United States v. Thomas, 74 F.3d 676, 681 (6th Cir.)……………………………33

**STATUTES**

Fed.R.Evid. 702……………………………………………….…………………7

Ohio Revised Code Section 2307.74-77……………………………………..…..6

28 U.S.C.A. § 1291……………………………………………...…………….6

28 U.S.C.A. § 1332…………………………………………..…………………6

## STATEMENT OF JURISDICTION

This is a product's liability case involving a defective revolver, the 460 XVR manufactured by Smith & Wesson, Corp. In the original complaint filed in the Cuyahoga County Court of Common Pleas, Appellant set out the following bases for his products liability case: the Smith & Wesson 460 XVR Revolver was defective as manufactured as defined in Ohio Revised Code Section 2307.74; the 460 XVR was defective in design and/or formulations as described in Ohio Revised Code Section 2308.75; the Smith & Wesson 460 XVR was defective due to inadequate warnings as described in Ohio Revised Code Section 2307.76; the 460 XVR was defective due to nonconformance with Appellee's representations, as described in Section 2307.77 of the Ohio Revised Code. RE 1, Original Complaint, Attachment 1, Page ID #6-16.

The action was removed to the Northern District of Ohio due to diversity jurisdiction. Therefore, subject matter jurisdiction in the district court was based on 28 U.S.C.A. § 1332 (West 2010). The basis of jurisdiction in the Court of Appeals is 28 U.S.C.A. § 1291 (West 2010). A final judgment dismissing the case pursuant to a stipulated dismissal, preserving the right to appeal the district court's order precluding the testimony of Roy Ruel was entered by the Northern District of Ohio on April 19, 2013. RE 56, Order Dismissing Case, Page

ID#1381.  Notice of Appeal was timely filed in the Northern District of Ohio on

May 9, 2013.  RE 57, Notice of Appeal, Page ID# 1382-3.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Whether the district court erred by granting Appellee's Motion to Exclude the Testimony of Roy Ruel on the grounds that Roy Ruel's expert testimony fails to satisfy the relevancy requirement set out in Fed.R.Evid. 702.

## STATEMENT OF THE CASE

This is an appeal of the district court's order granting defendant-appellee's Motion to Preclude the Testimony of Roy Ruel Pursuant to Fed.R.Evid. 702.  RE 52, Order on Motion in Limine.  Plaintiff –appellant filed his product's liability suit in connection with an incident that occurred on November 11, 2006 which resulted in loss of vision and extensive damage to Mr. Lee's right eye.  In support of his product's liability suit, appellant sought to introduce the expert testimony of mechanical engineer Roy Ruel.  RE 23, Initial Disclosures, Page ID #481.  Mr. Ruel, after reviewing all relevant material and examining the 460 XVR in question, formed the expert opinion that the revolver was defective both in manufacture and design because it could and did in fact fire with the cylinder open, causing extensive injuries to Mr. Lee.  Defendant-appellee has maintained the argument that Mr. Lee's injuries were caused by recoil.

On November 26, 2012, defendant-appellee filed a Motion in Limine seeking to exclude the testimony of Roy Ruel pursuant to Fed.R.Evid. 702. Appellee claimed that the court should exclude the testimony of Roy Ruel because: 1) Mr. Ruel is not qualified to provide expert testimony as to the design of the 460 XVR; 2) Ruel's testimony fails the relevance requirement as his reconstruction of the incident is inconsistent with Mr. Lee's testimony; 3) Ruel's testimony fails the

reliability requirement as it is not supported by testing or research.  See RE 46, Brief in Support of Motion in Limine, Attachment 1, Page ID #'s 675-698.

On January 23, 2013, the district court granted appellee's motion in limine on the grounds that Roy Ruel's testimony failed to satisfy the relevancy requirement set out in Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and its progeny, codified in Rule 702 of the Federal Rules of Evidence. Specifically, the district court based its opinion on the following alleged inconsistencies between Mr. Lee's testimony and Roy Ruel's expert opinion:

1)  Mr. Lee testified that he had no difficulty firing the gun the third time, while Ruel stated the gun did not immediately fire.

2)  Mr. Lee testified the cylinder was closed when he fired the gun, whereas Mr. Ruel states it was open.

3)  Mr. Lee's demonstration of his hold on the gun shows his finger was not near the thumb latch, while Mr. Ruel states Mr. Lee pulled the thumb latch.

Based on the foregoing alleged inconsistencies, the district court ordered Mr. Ruel's testimony inadmissible and suggested that plaintiff enter a dismissal as he would not survive summary judgment without an expert.  See RE 52, Order Granting Motion in Limine, Page ID #'s 1372-73.

10

Plaintiff-Appellant entered a Stipulated Dismissal preserving his right to appeal the district court's ruling.  <u>See</u> RE 55, Motion for Dismissal.  The district court granted the motion and dismissed the case on April 19, 2013. <u>See</u> 56, Order Dismissing Case, Page ID#1381.  Notice of Appeal was timely filed in the Northern District of Ohio on May 9, 2013.  RE 57, Notice of Appeal, Page ID# 1382-3.

<strong>STATEMENT OF FACTS</strong>

On November 11, 2006, Mr. Lee was shooting a Smith & Wesson Model 460 XVR revolver, purchased two months prior from Sportsman's Den gun shop in Shelby, Ohio.  <u>See</u> RE 46, Motion in Limine, Attachment 9, Lee Deposition Transcript, Page ID #'s 986; 1016; 1018.  Mr. Lee fired the XVR twice that day without incidence; however, upon firing the third shot, Mr. Lee felt the sensation that "somebody hit me in the face."  <u>Id.</u> at Page ID #1036.  Mr. Tom Temple, there at the time of the incident, said the gun fired louder than it had been when Mr. Lee fired it that third time.   <u>See</u> RE 50, Plaintiff's Opposition, Attachment 3, Transcript of the Testimony of Tom Temple, Page ID #'s 1242-3.  He also saw a yellowish flash which he did not previously see when Mr. Lee fired the gun the third time.  <u>Id.</u> at Page ID # 1243.  Mr. James Adams additionally testified that the gun made a strange noise when fired the third time.  <u>See</u> RE 50, Plaintiff's Opposition, Attachment 4, Transcript of the Testimony of James Adams, Page ID#

11

1321.  He also noticed a brighter flash than normal.  Id. at Page ID# 1322.  Mr. Lee lowered the gun down and passed it to his friend Tom Temple.  RE 50, Plaintiff's Opposition, Attachment 3, Transcript of the Testimony of Tom Temple, Page ID # 1246.  Mr. Temple testified that the cylinder was open at the time Mr. Lee handed him the gun.  Id.; RE 46, Attachment 9, Lee Deposition, Page ID #1040.  Mr. Adams confirmed that the chamber was open when Mr. Lee put the gun down.  RE 50, Attachment 4, Page ID # 1329.  Mr. Temple and Mr. Adams further testified that when they went to retrieve the 460, they could not get the cylinder closed.  RE 50, Attachment 4, Page ID #1246-48; RE 50, Attachment 3, Page ID # 1329.  Mr. Lee was later transported to the Emergency Room.

The Emergency Room Report showed Mr. Lee had suffered a "very large corneal abrasion" and Mr. Lee was diagnosed with "acute right eye hyphema and abrasion, nasal abrasion, and lower lid laceration, superficial."  RE 50, Plaintiff's Opposition, Attachment 5, Page ID #'s 1346-47.  Since this time, Mr. Lee has continued to suffer significant vision loss and pain associated with the damage to his right eye.  See RE 50, Plaintiff's Opposition, Attachment 6, Letter by Eric Dudenhoefer, M.D, Page ID#'s 1348-50.  Additionally, Mr. Lee's granite business was devastated by his inability to perform essential business functions due to his eye damage and debilitating eye pain.  See RE 46, Motion in Limine, Attachment 8, Lee Deposition Transcript, Page ID #'s 901-03.

12

Appellant sought the assistance of firearms expert Roy Ruel.  Roy Ruel is a mechanical engineer with over forty years experience working in the field in both the U.S. and abroad.  <u>See</u> RE 50, Plaintiff's Opposition, Attachment 1, CV of Mr. Roy Ruel, Page ID# 1135-43.  Mr. Ruel has a background in firearms and gun function, mechanics, and safety, augmented by U.S. Army active duty and reserve service with expert qualification in several military small arms.  <u>Id.</u>  Mr. Ruel has provided expert services on gun and shooting related investigations, reconstructions, and causation analysis for over 15 years.  <u>Id.</u>  He has been admitted as an expert on firearms and/or gun safety in numerous courts, including: United States District Court- Southern District of New York; United States District Court- Eastern District of Washington; United States District Court- District of Oregon; Superior Court of the State of Washington for Pierce County; Circuit Court of Kanawha County, West Virginia; Circuit Court of Harrison County, West Virginia; Superior Court of the State of California; Circuit Court of Eau Claire County Branch 5; Thurston County Court, Family and Juvenile Court; Circuit Court St. Croix County, Hudson, WI; Federal Administrative Judge, Dallas, Texas; District Court of the First Judicial District of the State of Idaho and for the County of Kootenai.  <u>See</u> RE 50, Attachment 2, Testimony Listing of Roy Ruel, Page ID#'s 1144-48.  Additionally, Mr. Ruel is the author of more than forty firearms related published articles, many devoted to the technical functioning of guns and

their ammunition.  Id.  He has offered expert services in over eighty cases, both

civil and criminal.  Id.

Mechanical engineer and gun expert Mr. Roy Ruel examined the Smith &

Wesson Model 460 XVR revolver involved in this incident, the sales receipt from

Sportsman's Den, Inc., the complaint, the deposition of Mr. Mark D. Lee, the

testimony of Thomas J. Temple, the testimony of James A. Adams, the report of

James C. Hutton, the report of Richard N. Ernest, the settlement brochure,

plaintiff's answer to Smith & Wesson's interrogatories and Sportsman's Den

interrogatories, Mr. Dudenhoefer's letter, Mr. Joshi's letter, Mr. Lee's medical

reports, and all photos of the 460 XVR taken in connection with this litigation.

After reviewing all of these items, Mr. Ruel formed an expert opinion that the

cylinder of the 460 XVR was not fully closed when Mr. Lee fired that third shot.

See RE 50, Attachment 7, Expert Report by Roy Ruel.

Mr. Ruel states that:

When a revolver's cylinder is not fully closed and locked, the chamber and
cartridge do not line up with the barrel and when fired the bullet enters the
barrel slightly off-center.  The result is that a higher than normal pressure is
required in the gun's cylinder to force the misaligned bullet into and down
the barrel.  The high pressure causes the gap between the barrel and cylinder
to widen and a large amount of gas and unburned powder to be expelled,
creating a much brighter flash and louder report.  Id., Page ID # 1353.

Mr. Ruel opines that a defect exists in the 460 XVR because the gun was still able to be fired despite the cylinder not being closed and locked.  Mr. Ruel believes that Mr. Lee was able to fire the gun despite the chamber being open by pushing on the thumb latch.  Id.  As support for this finding, Mr. Ruel points to the fact that the cylinder on the gun was open when it was handed to Mr. Temple and Mr. Adams. RE 50, Plaintiff's Opposition, Attachment 3, Transcript of the Testimony of Tom Temple, Page ID # 1246; RE 46, Attachment 9, Lee Deposition, Page ID #1040; RE 50, Attachment 4, Page ID # 1329.  Further, both Mr. Temple and Mr. Adams testified to a louder than usual noise and brighter than usual flash upon firing of the third shot.  Additionally, the men stated that the spent casing was difficult to remove and they had to pry it out with a knife.  RE 50, Plaintiff's Opposition, Attachment 3, Page ID # 1250; RE 50, Attachment 4, Page ID # 1328.

In further support of his theory, Mr. Ruel found that the ejector rod in the 460 XVR had become loose, a fact which the defendant's expert Mr. Hutton also attested to.  Mr. Ruel states that the loosening of the ejector rod caused the "cylinder and yoke to bind making closing of the cylinder difficult" which then prevented it from fully closing and locking.  See RE 50, Attachment 7, Expert Report by Roy Ruel, Page ID #1354.  Based on his findings, Mr. Ruel will testify that the Smith & Wesson XVR was defective in both design and manufacture because it could be cocked and fired with a pull of the trigger without the cylinder

closed and locked; it was defective in design and manufacture because its ejector rod could become loose preventing its cylinder from closing and locking; and Smith & Wesson failed to provide adequate warning that the gun could be fired without the cylinder closed and locked and of the hazard of hot gases being ejected by the gun when fired with the cylinder not closed and locked.

Defendant-appellee has put forth the flawed theory that Mr. Lee's injuries were caused merely by recoil. The theory fails to take into account the fact that Mr. Lee was an experienced shooter, with years of shooting experience and prior experience shooting the 460 XVR in particular. Further, a revolver would not cause injuries to one's eyes upon recoil. Due to the position in which it is held, the gun would rotate upward, not straight back as required to strike Mr. Lee in the eye. In addition, there was not blood splatter on the ground such as you would expect following a recoil accident of this nature. See RE 50, Attachment 7, Ruel Report, Page ID #'s 1354-55.

## SUMMARY OF ARGUMENT

The sole issue on appeal is whether the district court erred in granting appellee's motion in limine and excluding the testimony of mechanical engineer Roy Ruel on the grounds that his testimony failed to satisfy the relevancy requirement set out in Daubert and codified in Fed.R.Evid. 702. Appellant urges that the district court erred in excluding the testimony of Mr. Roy Ruel as Mr. Ruel

16

is a qualified expert whose theory is based on solid factual support.  Appellant states that Mr. Ruel's testimony should have been admissible under Daubert and Fed. R. Evid. 702 given the intended liberal thrust of these evidentiary rules and the strong factual foundation for Mr. Ruel's opinion.

Appellant asserts the following facts in support of Mr. Ruel's theory:

A. Witnesses to the incident heard a loud pop upon Mr. Lee firing the third shot.

B. Witnesses to the incident saw a bright flash upon Mr. Lee firing the third shot.

C. The 460 XVR's cylinder was open when recovered and witnesses were unable to close it.

D. Mr. Lee's fingers were located very close to the thumb piece upon firing the weapon, as his photographs from his video demonstration substantiate.

E. The alleged mismatch between Mr. Lee's testimony and Mr. Ruel's is insignificant and not sufficient to rule Mr. Ruel's testimony baseless.

F. The scratches on the yoke support Mr. Ruel's testimony.

G. Mr. Ruel's own testing of the weapon confirms his theory.

H. Mr. Lee's injuries are consistent with Mr. Ruel's expert recreation of the events.

Given the foregoing facts in support of Mr. Ruel's theory, appellant urges that the district court committed an abuse of discretion in excluding the testimony of Roy Ruel on the grounds of relevancy. Under <u>Daubert</u> and Fed.R.Evid. 702, appellant must merely establish that Mr. Ruel's testimony is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. The standard is not an onerous one and it is not required that all facts are an exact match. Appellant urges that the facts, as described <u>supra</u>, provide a strong factual foundation for Mr. Ruel's testimony and as such the district court erred in excluding it.

## STANDARD OF REVIEW

The standard for reviewing a judge's decision to exclude or admit expert testimony is abuse of discretion. <u>See</u> <u>General Electric Co. v. Joiner</u>, 522 U.S. 136, 138-139 (1997); <u>Kumho Tire v. Carmichael</u>, 526 U.S. 137, 119 S.Ct. 1167, 1171 (1999); <u>American & Foreign Ins. Co. v. General Electric Co.</u>, 45 F.3d 135 (6th Cir. 1995).

# ARGUMENT

The district court abused its discretion when it granted defendant-appellee's Motion to Preclude the Testimony of Roy Ruel Pursuant to Fed.R.Evid. 702 based on the alleged lack of relevancy of Mr. Ruel's testimony.  Appellant submits that the testimony of Roy Ruel, a mechanical engineer with a background in firearms and gun function, mechanics, and gun safety, is clearly admissible under the standards pronounced in <u>Daubert v. Merrill Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), and its progeny, codified in Rule 702 of the Federal Rules of Evidence.

Rule 702 of the Federal Rules of Evidence establishes the requirements for admissibility of expert testimony.  Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge swill help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> I the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed.R.Evid. 702.  In <u>Daubert v. Merrill Dow Pharmaceuticals, Inc.</u>, <u>supra</u>, the Supreme Court provided extensive guidance for the application of the dictates of

Rule 702.  The Court explained that Rule 702 displays a "liberal thrust" with the "general approach of relaxing the traditional barriers to 'opinion' testimony." Id. at 588 (quotation omitted).  But, the Court continued, Rule 702 places some restrictions on the admissibility of expert testimony, and the district court retains the responsibility of "screening such evidence." Id. at 589. When a party proffers expert testimony, the district court must determine whether the testimony is both relevant and reliable when ruling on its admission. See id. at 590-91.

In assessing the relevance and reliability of proffered expert testimony, the district court must determine:

> whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether the reasoning or methodology properly can be applied to the facts in issue.

Daubert, 509 U.S. at 592-93. "'[S]cientific knowledge' establishes the standard of evidentiary reliability," id. at 590, and to be considered appropriately scientific, the expert need not testify to what is "'known' to a certainty" but must only state "an inference or assertion . . . derived by the scientific method." Id.  Testimony meets this threshold when "an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice in the relevant field." Kumho Tire Co., Ltd. V. Carmichael, 526 U.S. 137, 152 (1999).  Experts are permitted a wide latitude in

their opinions, including those not based on firsthand knowledge, so long as "the expert's opinion [has] a reliable basis in the knowledge and experience of the discipline." <u>Daubert</u>, 509 U.S. at 592.  The court explained that relevance of proposed scientific testimony is established through Rule 702's "'helpfulness' standard" which "requires a valid scientific connection to the pertinent inquiry as a precondition for admissibility." <u>Id.</u> at 591-92.  In the end, Rule 702 embodies a flexible approach and its "overarching subject is the scientific validity . . . of the principles that underlie the proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." <u>Daubert</u>, 509 U.S. at 594-95.

Further, the Sixth Circuit has held that "it is not proper for the Court to exclude expert testimony merely because the factual bases for an expert's opinion are weak." <u>Andler v. Clear Channel Broad., Inc.</u>, 670 F.3d 717, 729 (6th Cir. 2012) (internal quotation marks omitted).  Instead, the jury may "give [the expert's] testimony as much credence as it felt the testimony deserved, particularly in light of [the] [d]efendant's cross-examination exposing [the expert's] lack of familiarity with the given topics." <u>Morales v. Am. Honda Motor Co.</u>, 151 F.3d 500, 516 (6th Cir. 1998).

Appellant asserts that applying the legal principals pronounced <u>supra</u>, the district court committed an abuse of discretion in excluding the testimony of Roy

Ruel as Mr. Ruel meets all requirements for providing expert testimony in this case. Mr. Ruel is a qualified expert, with an opinion based sufficiently on the facts of the case, and a theory that employs reliable scientific methodology.

## I.    Roy Ruel is Qualified to Provide Expert Testimony as to a Manufacturing/Design Defect in this Case.

Defendant-appellee urged in his motion in limine that Mr. Ruel was not qualified to provide expert testimony in this case. The district court disagreed, finding Mr. Ruel to be a qualified expert. Appellant will briefly touch on Mr. Ruel's qualifications before turning to the central issue of the appeal—the relevancy of Mr. Ruel's testimony.

Mr. Ruel is a mechanical engineer with a degree from the University of Washington. Mr. Ruel is additionally a graduate of the American Management Association Management School and has completed technical studies in firearms, their function, operation, recoil, mechanics, ballistics, recoil and safety, as well as Glock Armorer's school.    See RE 50, Attachment 1, CV of Mr. Roy Ruel, Page ID# 1135-43. Mr. Ruel has over forty years experience working in the field of mechanical engineering and has provided expert services on gun and shooting related investigations, reconstructions, and causation analysis for over 15 years. Id.    As mentioned in the Introduction, supra, Mr. Ruel has been admitted as a gun expert in numerous courts throughout the country.

22

As a mechanical engineer with substantial training in firearm safety and design, Mr. Ruel is qualified to tender an opinion as to the defects in the design and manufacture of the Smith & Wesson 460 XVR and the inadequacy of Smith & Wesson's warnings. The Sixth Circuit has held "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact." <u>Davis v. Combustion Eng'g, Inc.</u>, 742 F.2d 916, 919 (6th Cir. 1984). Here, Mr. Ruel is qualified as an expert since his testimony would certainly assist the trier of fact in understanding the evidence. Ruel's education and experience as a mechanical engineer gives him specialized knowledge in the area of design, manufacturing, and maintenance of mechanical systems. This knowledge is directly applicable to Plaintiff's claim that the Smith & Wesson 460 XVR injured Mr. Lee as the result of defects in the gun's design and manufacture, and additionally due to the inadequacy of Smith & Wesson's warnings. Further, Mr. Ruel's training in gun function, operation, and safety enables him to thoroughly discuss the process of firing a gun and how a misstep in that process could affect the discharge of the weapon, causing injury to the shooter. Accordingly, Plaintiff urges that Mr. Ruel is a qualified as an expert pursuant to Rule 702, with which the district court agrees.

## II.    Mr. Ruel's Testimony is Relevant under the Standards Pronounced in  Rule 702 and <u>Daubert</u>.

Rule 702 further requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue."  As <u>Daubert</u> explains, "[t]his condition goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.' 3 Weinstein & Berger ¶ 702[02], p. 702-18; <u>See</u> <u>also</u> <u>United States v. Downing</u>, 753 F.2d 1224, 1242 (CA3 1985) ("An additional consideration [113 S. Ct. 2796] under Rule 702—and another aspect of relevancy —is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute").  This criteria has been described as "fit."  <u>Id.</u> Further, a district court's role as gatekeeper to prevent misleading and unreliable expert testimony "is not to determine whether [the testimony] is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation."  <u>In re Scrap Metal Antitrust Litigation</u>, 52,7 F.3d 517, 529-30 (6th Cir. 2008).

The district court excluded the testimony of Roy Ruel finding his testimony was not relevant because it does not fit the facts of the case.  Specifically, the court found Mr. Ruel's testimony did not fit the facts of the case because:

> 1)  Mr. Lee testified that he had no difficulty firing the gun the third time, while Ruel stated the gun did not immediately fire.

2) Mr. Lee testified the cylinder was closed when he fired the gun, whereas Mr. Ruel states it was open.

3) Mr. Lee's demonstration of his hold on the gun shows his finger was not near the thumb latch, while Mr. Ruel states Mr. Lee pulled the thumb latch.

<u>See</u> RE 52, Order Granting Motion in Limine, Page ID #'s 1372-73.

However,   the district court opinion ignores the plethora of facts that do provide a solid factual foundation for Mr. Ruel's testimony.  Appellant urges that in determining Mr. Ruel's testimony lacks relevancy, the district court abused its discretion because the facts set out below provide a sufficient foundation so as to meet the minimal <u>Daubert</u> relevancy requirements, which aim to exclude testimony based solely on mere speculation.  <u>In re Scrap Metal Antitrust Litigation</u>, <u>supra</u>.

In support of Roy Ruel's theory, appellant sets out the following facts:

**A. Witnesses to the incident heard a loud pop upon Mr. Lee firing the third shot**.

As set out in the Facts of the Case, Mr. Ruel's basic theory is that the Smith & Wesson 460 XVR fired by Mark Lee on November 11, 2006, fired without the revolver's cylinder fully closed and locked, causing a higher than normal pressure which resulted in the gun expelling a large amount of gas or unburned powder, which either directly damaged Mr. Lee's eye or caused his safety glasses to fly back, severely damaging his eye.  <u>See</u> RE 50, Attachment 7, Expert Report by Roy

25

Ruel; RE 46, Attachment 5, Deposition of Roy Ruel, Page ID #769. Mr. Ruel states that based on his expert firearm knowledge, a revolver fired without the chamber fully closed and locked would cause a much louder pop or report than normally heard when a gun is fired. The louder than usual noise is caused by the higher than normal pressure due to the chamber not being closed and locked ("The high pressure causes the gap between the barrel and cylinder to widen and a large amount of gas and unburned powder to be expelled, creating a much brighter flash and louder report. RE 50, Attachment 7, Expert Report by Roy Ruel, Page ID # 1353.").

There were only two witnesses to the incident, Mr. Temple and Mr. Adams. Both men clearly stated in their depositions that the 460 XVR made a louder than normal noise when fired that third time and the noise sounded strange. See RE 50, Plaintiff's Opposition, Attachment 3, Transcript of the Testimony of Tom Temple, Page ID #'s 1242-3; See RE 50, Plaintiff's Opposition, Attachment 4, Transcript of the Testimony of James Adams, Page ID# 1321. These are two men who had just heard the gun fired twice previously and have significant exposure to guns themselves. Both provided testimony as to the strange noise of that third shot which directly supports Mr. Ruel's testimony.

**B. Witnesses to the incident saw a bright flash upon Mr. Lee firing the third shot.**

Mr. Ruel stated that in addition to a louder than normal report, the firing of the weapon with the cylinder open would cause a brighter than normal flash.  See RE 50, Attachment 7, Expert Report by Roy Ruel, Page ID # 1353.  Mr. Temple and Mr. Adams, the two eye witnesses, also reported viewing a much brighter than normal flash when Mr. Lee fired that catastrophic third shot.  See RE 50, Plaintiff's Opposition, Attachment 3, Transcript of the Testimony of Tom Temple, Page ID #'s 1243; See RE 50, Plaintiff's Opposition, Attachment 4, Transcript of the Testimony of James Adams, Page ID# 1322.

**C. The 460 XVR's cylinder was open when recovered and witnesses were unable to close it.**

In strong support of Mr. Ruel's theory, both Mr. Adams and Mr. Temple testified that the 460 XVR's cylinder was opened when Mr. Lee handed it to them after firing that third shot.  RE 50, Plaintiff's Opposition, Attachment 3, Transcript of the Testimony of Tom Temple, Page ID # 1246; RE 46, Attachment 9, Lee Deposition, Page ID #1040; RE 50, Attachment 4, Page ID # 1329.  Additionally, Mr. Temple and Mr. Adams stated that the spent casing was difficult to remove and they had to pry it out with a knife.  RE 50, Plaintiff's Opposition, Attachment 3, Page ID # 1250; RE 50, Attachment 4, Page ID # 1328.

The presence of an open cylinder after the weapon had fired that third time is highly relevant and provides strong factual support for Mr. Ruel's testimony. A gun's cylinder should not open after firing, nor should the casing be so jammed in the cylinder that it had to be pried open. These two factors lend significant support to Mr. Ruel's testimony and should outweigh any inaccuracies as to Mr. Lee's later attempt at recalling the highly stressful, traumatic event.

### D. Mr. Lee's fingers were located very close to the thumb piece upon firing the weapon, as his photographs from his video demonstration substantiate.

To reiterate Mr. Ruel's proposed testimony—Mr. Ruel opined that the cylinder on the 460 XVR was not fully closed or locked when Mr. Lee went to fire it that third time. Mr. Ruel believes that Mr. Lee attempted to fire the revolver without the cylinder locked and could not do so. Accordingly, he pushed the thumb piece, which allowed the gun to fire even though the chamber was not locked. He urges that this is a design flaw that a high powered revolver such as the 460 XVR can be made to fire without the cylinder closed, causing massive potential injuries such as occurred to Mr. Lee that day. See RE 50, Attachment 7, Expert Report by Roy Ruel, Page ID # 1351-7.

The appellee and the district court found it persuasive that Mr. Lee, in a videotaped demonstration of his hold of the gun, did not have his thumb on the thumb piece. See RE 46, Attachment 1, Brief in Support of Motion in Limine,

28

Page ID #685.  However, appellant reaches just the opposite conclusion in viewing the photograph included in appellee's brief—the picture shows the close proximity between Mr. Lee's hands and the thumb piece.  A mere reach for the trigger would place Mr. Lee's thumb right next to or on the thumb piece.  The picture makes it clear that Roy Ruel's theory as to the thumb piece is not without a factual basis—it is a fact that Mr. Lee's fingers were right near the thumb piece.  Further, Mr. Lee was an experienced shooter who knew that a gun could be made to fire by pulling back the thumb piece.  Even further, the entire incident happened in a matter of seconds, making it quite possible that Mr. Lee reached for the thumb piece out of instinct, as it was right by his thumb, causing the gun to fire even though the cylinder was not locked and a gun firing under such circumstances create a very dangerous situation.

### E.  The alleged mismatch between Mr. Lee's testimony and Mr. Ruel's is insignificant and not sufficient to rule Mr. Ruel's testimony baseless.

The district court appeared to largely base its decision to exclude the testimony of Roy Ruel on the alleged mismatch between Mr. Lee's deposition testimony and Mr. Ruel's testimony.  The court pointed again to the thumb piece issue—stating that Mr. Lee never testified to manipulating the thumb piece, or to the gun not firing on that third round.

Mr. Ruel set out a general theory that the 460 XVR fired on November 11,

2006 with the cylinder opened.  He then attempted to recreate the event with his expert knowledge and with a review of the facts.  His recreation of the events is supported by the numerous facts set out in sections II. A-H of this appeal, such as: the witness's recollections to a louder pop and flash; the open cylinder after firing; Mr. Lee's hand positioning on the weapon; Ruel's own testing of the weapon, during which he found the gun could be cocked ready to fire by a pull of the trigger without its cylinder being fully closed; and  the damage found on the gun's cylinder ratchet indicates the ejector rod became loose prior to Mr. Lee's accident, which would have caused the cylinder to bind and prevented it from fully closing. That Mr. Lee never specifically mentioned pushing on the thumb latch does not invalidate Mr. Ruel's theory of causation.

It is first important to note that Mr. Lee was never specifically asked, in the hundreds and hundreds of questions thrown at him, whether he touched the thumb latch.   Further, we have not heard any testimony that would contradict the possibility that Mr. Lee pushed the thumb latch unconsciously or that it was accidently tapped.  Even further, it is important to remember that Mr. Lee was being forced to recall a highly stressful, traumatic event that occurred three years before his deposition.

The Sixth Circuit has held that "it is not proper for the Court to exclude expert testimony merely because the factual bases for an expert's opinion are

weak." Andler v. Clear Channel Broad., Inc., 670 F.3d 717, 729 (6th Cir.

2012) (internal quotation marks omitted).  Instead, the jury may "give [the

expert's] testimony as much credence as it felt the testimony deserved, particularly

in light of [the] [d]efendant's cross-examination exposing [the expert's] lack of

familiarity with the given topics." Morales v. Am. Honda Motor Co., 151 F.3d

500, 516 (6th Cir. 1998).  Here, Mr. Ruel's opinion is far from weak because it is

based on the strong factual information cited to supra.  However, even assuming

for the sake of argument that it is weak in regards to the thumb latch issue, the case

law suggests that Mr. Ruel's testimony should be presented to the jury and the jury

allowed to make its own credibility determination.

### F. The gun itself, examined after the incident, lends factual support to Mr. Ruel's testimony.

Mr. Ruel examined the 460 XVR in question after the accident, in

preparation of his report.  What he found lent further support for his expert theory

as to what happened when the weapon was fired for the third time on November

11, 2006.  Mr. Ruel found that there was significant scratching and damage to the

yoke.  These scratches were caused by the ejector rod becoming loose, which

caused the cylinder and the yoke to bind, preventing the cylinder from fully closing

and locking.  See RE 50, Attachment 7, Ruel Report, Page ID # 1354.  Appellee's

expert also noticed this abnormal scratching to the yoke, but opined it was caused

by normal wear.  Mr. Ruel urged the scratching was far beyond normal marring
and had to have been caused by a more unexpected, forceful event.

Appellant urges that the scratching to the yoke is yet another fact in support
of Mr. Ruel's theory, and the dispute between the experts as to the true cause of the
scratches is a factual determination that should have been left to the hands of the
jury—not a decision to be usurped by the district court.  Andler v. Clear Channel
Broad., Inc., supra.

### G. Mr. Ruel's testimony is supported by his own recreation of the event.

Mr. Ruel recreated his exact theory—that the 460 XVR fired without the
cylinder closed through manipulation of the thumb piece.  He did so using a
primer.  He found the weapon could be fired with the cylinder open in this manner.
See RE 46, Attachment 4, Page ID#'s 758-760.  Accordingly, Mr. Ruel's own
testing supports his testimony, which goes to both relevancy and reliability.

### H. Mr. Lee's injuries are consistent with Mr. Ruel's expert recreation of the events.

The Emergency Room Report showed Mr. Lee had suffered a "very large
corneal abrasion" and Mr. Lee was diagnosed with "acute right eye hyphema and
abrasion, nasal abrasion, and lower lid laceration, superficial."  RE 50, Plaintiff's
Opposition, Attachment 5, Page ID #1346-47.  The defendant-appellee's medical
expert, Dr. White, opined that Mr. Lee's injuries were caused by blunt force

trauma.  RE 46, Attachment 12, White Report, Page ID #1114.  This is consistent with Mr. Ruel's testimony that the high pressure of the gun firing without the chamber closed caused the safety glasses to fly back in Mr. Lee's face, causing his severe eye injuries.  RE 46, Attachment 5, Deposition of Roy Ruel, Page ID #769. Further, pictures taken after the incident reveal the presence of burns on Mr. Lee's face, consistent with Mr. Ruel's testimony as to hot gasses being expelled.



Picture of Mr. Lee's injuries taken shortly after the incident.  Note the clear burns around the eye.

### III.  Mr. Ruel's Testimony is Reliable Under the Standards Pronounced in Rule 702 and <u>Daubert</u>.

In <u>Daubert</u>, the majority recognized that the federal courts fulfill an important "gatekeeping" function, guaranteeing that evidence is both relevant and

reliable. 509 U.S. at 589.  The Daubert Court then suggested a non-exclusive list of factors for courts to consider when deciding whether proposed scientific expert testimony is sufficiently "reliable." Such factors include: (1) "whether a theory or technique . . . can be "and has been tested"; (2) "whether the theory or technique has been subjected to peer review or publication"; (3) "the known or potential rate of error"; and (4) "general acceptance."  Id. at 593-94.  Although Daubert specifically dealt with "scientific" evidence, the Sixth Circuit has recognized that the "gatekeeper" analogy "'is applicable to all expert testimony offered under Rule 702.'"  United States v. Thomas, 74 F.3d 676, 681 (6th Cir.), cert. denied, 517 U.S. 1162 (1996), abrogated on other grounds by Gen. Elec. Co. v. Joiner, 522 U.S. 136 (1997), quoting Berry v. City of Detroit, 25 F.3d 1342, 1350 (6th Cir. 1994), cert. denied, 513 U.S. 1111 (1995); Cook v. American S.S. Co., 53 F.3d 733, 738 (6th Cir. 1995) (noting that a duty comparable to Daubert's "gatekeeping" function "is imposed upon a trial court when the subject of the proposed opinion testimony is not 'scientific' knowledge, but 'technical, or other specialized knowledge'"), abrogated on other grounds by Joiner, 522 U.S. 136.

Defendant-appellee urged that Mr. Ruel's theory was not reliable because it had not been tested.  The district court seemingly found this argument unpersuasive as it based its decision to exclude Mr. Ruel's testimony solely on the

grounds of lack of relevancy. Appellant briefly touches upon the issue on appeal to highlight the reliability of Mr. Ruel's testimony.

Mr. Ruel tested his theory by examining the 460 XVR on March 11, 2011 and determined that the gun could "be cocked and ready to fire by a pull of the trigger without its cylinder being fully closed." RE 50. Attachment 7, Expert Report by Roy Ruel, Page ID# 1354.

Further, Mr. Ruel's mechanical engineering backgrounds enabled him to understand the repercussions of firing a weapon without the cylinder being closed, i.e. expulsion of hot gas through the gap in the chamber. The fact that Mr. Ruel's opinion does not eliminate all other possible causes of Mr. Lee's injuries is of no accord to the issue of whether this Court should admit his testimony. "In order to be admissible on the issue of causation, an expert's testimony need not eliminate all other possible causes of the injury." Jahn v. Equine Services, 233 F.3d 382 (6th Cir., 2000), citing Ambrosini v. Labarraque, 101 F.3d 129, 140 (D.C. Cir. 1996). "The fact that several possible causes might remain 'uneliminated' . . . only goes to the accuracy of the conclusion, not to the soundness of the methodology." Id. Here, Mr. Ruel's expert opinion as to the cause of Mr. Lee's injuries is reliable under Rule 702 and Daubert as it is a tested theory based on strong factual support and scientific principles.

## CONCLUSION

This Circuit pronounced in <u>Andler v. Clear Channel Broad., Inc.</u>, <u>supra</u>, that "it is not proper for the Court to exclude expert testimony merely because the factual bases for an expert's opinion are weak." Rather than act as a gatekeeper under such circumstances, the court should allow the jury to view the evidence and determine what weight it deserves. <u>Morales v. Am. Honda Motor Co.</u>, <u>supra</u>. Mr. Lee urges that the district court abused its discretion in excluding the testimony of Roy Ruel on the grounds that his testimony was not relevant due to a lack of strong factual basis. As this Honorable Court has previously pronounced, the district court should not act as a gatekeeper where the factual basis of an expert's opinion is feeble. Even further, in this case, the factual basis for Mr. Ruel's testimony is far from weak--- his testimony stands on a strong factual foothold. Mr. Ruel's testimony is supported by the following crucial facts: witness reports that the 460 XVR made a strange noise when fired the third time and created a brighter than usual flash, which is consistent with Mr. Ruel's theory as to the revolver firing without the cylinder closed; the cylinder being open and the casing jammed inside when the weapon was retrieved; the close proximity of Mr. Lee's fingers to the thumb piece; the extensive scratching on the yoke of the gun, which was caused by more than normal use; Ruel's own testing of the weapon which revealed it could be fired with the cylinder open; and Mr. Lee's injuries which are consistent with

36

Mr. Ruel's recreation of the events. These seven facts lend a strong factual basis for Mr. Ruel's testimony. The overwhelming facts in support of his theory far outweigh any inconsistencies between Mr. Lee's deposition and Mr. Ruel's theory, particularly where Mr. Lee was testifying concerning an incident that occurred years prior, and being forced to recall an event that was both highly stressful and traumatic.

Appellant urges that given the intended liberal thrust of <u>Daubert</u> and Fed.R.Evid. 702, and in light of the numerous facts that do support Mr. Ruel's testimony, the district court erred in excluding appellant's sole expert witness, crippling his case such that he could not survive summary judgment. Appellant urges that this Court reverse the decision of the district court and admit the testimony of Roy Ruel, whose theory rests on strong factual footing.

## RELIEF REQUESTED

Appellant prays that this Honorable Court reverse the decision of the district court in granting defendant-appellee's Motion to Exclude the Testimony of Roy Ruel Pursuant to Fed.R.Evid. 702 and remand the matter to the trial court.

Respectfully Submitted,

Brittany L. Lee, Attorney At Law

By:     s/Brittany L. Lee

37

Brittany L. Lee, LA Bar No. 33239
611 S. Scott St.
New Orleans, LA 70119
(504) 428-4315
Fax: (504) 899-1753
Email: brittanylaurenlee@yahoo.com
Counsel for Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

Pursuant to Sixth Circuit Rule 32(a)(7)(c) and Sixth Circuit Rule 32(a), the undersigned certifies that this brief complies with the type-volume limitation of Sixth Circuit Rule 32(a)(7)(b).

The brief has been prepared in proportional typeface using Times New Roman 14 point.

Exclusive of the portion of the brief exempted, the brief contains a total of 7,174 words.  If the Court so requests, the undersigned will provide an electronic version of the brief and/or a copy of the word or line printout.

The undersigned understands that a material misrepresentation in completing this certificate or circumvention of the type volume limits in Sixth Circuit Rule 32(A)(7), may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

s/ Brittany Lee

## CERTIFICATE OF SERVICE

I hereby certify that on this the 9th day of September, 2013, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record indicated on the electronic filing receipt. All other counsel of record will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

s/Brittany L. Lee
Brittany Lauren Lee

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

RE 1. Original Complaint, Attachment 1, Page ID #'s 6-16.

<u>RE 56.</u>  Order Dismissing Case, Page ID#1381.

<u>RE 57.</u>  Notice of Appeal, Page ID#'s 1382-3.

<u>RE 23.</u>  Initial Disclosures, Page ID #481.

<u>RE 46.</u>  Brief in Support of Motion in Limine, Attachment 1, Page ID #'s 675-698.

<u>RE 52.</u>  Order Granting Motion in Limine, Page ID #'s 1372-73.

<u>RE 55.</u>   Motion for Dismissal.

<u>RE 46.</u>  Motion in Limine, Attachment 9, Lee Deposition Transcript, Page ID #'s 901-03; 986; 1016; 1018; 1036; 1040.

<u>RE 50.</u>  Plaintiff's Opposition, Attachment 3, Transcript of the Testimony of Tom Temple, Page ID #'s 1242-3; 1246-50.

<u>RE 50.</u>  Plaintiff's Opposition, Attachment 4, Transcript of the Testimony of James Adams, Page ID# 1321-4; 1329.

<u>RE 50.</u>  Plaintiff's Opposition, Attachment 5, Page ID #'s 1346-47

<u>RE 50.</u>  Plaintiff's Opposition, Attachment 6, Letter by Eric Dudenhoefer, M.D, Page ID#'s 1348-50.

<u>RE 50.</u>  Plaintiff's Opposition, Attachment 1, CV of Mr. Roy Ruel, Page ID# 1135-43.

<u>RE 50.</u>  Attachment 2, Testimony Listing of Roy Ruel, Page ID #'s 1144-48.

<u>RE 50.</u>  Attachment 7, Expert Report by Roy Ruel, Page ID #'s 1351-55.

<u>RE 46.</u>  Attachment 5, Deposition of Roy Ruel, Page ID #769.

<u>RE 46.</u>  Attachment 4, Deposition of Roy Ruel, Page ID#'s 758-769.

<u>RE 46.</u>  Attachment 12, White Report, Page ID #1114.